# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LARRY ROBERTSON (#250866)**                    **CIVIL ACTION**

**VERSUS**

**JAMES LeBLANC, ET AL.**                         **NO. 13-0171-SDD-RLB**

## NOTICE

  Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

  In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

  ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

  Signed in Baton Rouge, Louisiana, on January 31, 2014.

          **RICHARD L. BOURGEOIS, JR.**
          **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

LARRY ROBERTSON (#250866)                          CIVIL ACTION

VERSUS

JAMES LeBLANC, ET AL.                              NO. 13-0171-SDD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss (Rec. Doc. 13). This Motion is not opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, Warden Burl Cain, Ass't Warden Kenneth Norris, Medical Director Jason Collins, Sgt. Earnestine Jackson, Disciplinary Hearing Officers W. Thomas and R. Augustine, Ass't Warden Kathy Fontenot, Col. David Voorhies, Disciplinary Appeal Officers B. Dobbs, M. Piazza and L. Roblin, Ass't Warden Troy Poret, Sgt. Shane Daniel, the Louisiana Department of Public Safety and Corrections, the "State of Louisiana Health Service," and the LSP "Investigation Service," complaining that the defendants violated his constitutional rights by housing him in a dormitory bed adjacent to a dangerous co-inmate in May, 2012, resulting in the plaintiff sustaining injury at the hands of the co-inmate on May 11, 2012.[1]  The plaintiff further complains that he was

---

1. An attempt by the United States Marshal's Office to serve "B. Dobbs" has proven unsuccessful because the Louisiana Department of Public Safety and Corrections has refused to accept service on behalf of this defendant, *see* Rec. Doc. 11, and the plaintiff has made no further attempt to obtain further identifying information relative to this person.  Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings.  It is appropriate, therefore, that the plaintiff's claims asserted against defendant B.

thereafter wrongly charged with a disciplinary rule violation, was placed in a cell with another

inmate while awaiting ensuing disciplinary proceedings, and was provided with inadequate

medical treatment.  Upon being found guilty in connection with the referenced disciplinary

charge, he was transferred to a working cellblock at Camp D at LSP where he was allegedly

subjected to unconstitutional conditions of confinement and to continuing medical indifference.

Finally, the plaintiff complains that his disciplinary appeal and administrative grievance filed in

connection with the foregoing events were wrongly handled by prison officials and that

defendant Poret subjected him to retaliatory harassment upon his transfer back to the main prison

complex in September, 2012.[2]

In the instant Motion to Dismiss, the defendants first seek dismissal on jurisdictional

grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's

claim asserted against them in their official capacities for monetary damages.[3]  In this regard, the

────────────────

Dobbs be dismissed, without prejudice.

2.  In his original Complaint (Rec. Doc. 1), the plaintiff named as defendants the
Louisiana Department of Public Safety and Corrections and the "State of Louisiana Health
Service."  In an Amended Complaint, however (Rec. Doc. 5), which he filed in response to a
deficiency notice sent by the Court (Rec. Doc. 4), he failed to list these parties as defendants.
Generally, "[a]n amended complaint supersedes the original complaint and renders it of no legal
effect unless the amended complaint specifically refers to and adopts or incorporates by
reference the earlier pleading."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).  Accordingly,
inasmuch as the plaintiff's Amended Complaint in this case did not incorporate his earlier
pleading, the Court interprets the amended pleading as terminating the Louisiana Department of
Public Safety and Corrections and the "State of Louisiana Health Service" as defendants in this
proceeding.  The Court further notes that these defendants would be subject to dismissal as
improper parties in any event inasmuch as the Department of Corrections is an agency of the
State of Louisiana and is not subject to suit in federal Court under the Eleventh Amendment to
the United States Constitution, *see, e.g., Champagne v. Jefferson Parish Sheriff's Office*, 188
F.3d 312, 313-14 (5th Cir. 1999), and the "State of Louisiana Health Service" is not a juridical
entity subject to suit herein.  *See* discussion, *infra*, regarding another named defendant, the LSP
"Investigation Service."

3.  It is unclear from the plaintiff's Complaint whether he is suing the defendants in their
official and/or their individual capacities.  The Court, however, interprets the pleadings of *pro se*

defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claim asserted against the defendants in their official capacities for monetary damages is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29.

Turning to the plaintiff's claims which are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and more recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly*, *supra*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

petitioners liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, the Court interprets the plaintiff's Complaint as naming the defendants in both capacities.

on its face.'"  *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679.  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (citation omitted).  Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, as amended, the plaintiff alleges that in May, 2012, he was assigned to a bed in an overcrowded dormitory at LSP which housed eighty-six (86) inmates.  The plaintiff contends that this over-crowding, together with an asserted lack of security, resulted in an increased potential for conflict between inmates.  The plaintiff further alleges that on May 11, 2012, he was brutally attacked without warning by a co-inmate who "had issues" and had repeatedly boasted of having killed an inmate at another institution in the 1980s.  The plaintiff complains that although he was provided with medical attention after the incident, he was

thereafter improperly placed in administrative segregation pending an investigation into the incident, and he asserts that he should have been placed instead in the LSP medical ward for observation.  In addition, the plaintiff complains that while confined in administrative segregation between May 11 and May 30, 2012, he was improperly housed with another inmate. He also complains that defendants David Voorhies and Earnestine Jackson failed to properly investigate the incident of May 11, 2012, and wrongly charged him with Aggravated Fighting as a result of the referenced incident.  After disciplinary proceedings were conducted, during which he was allegedly denied procedural due process, the plaintiff was found guilty of that charge and was sentenced to segregated confinement in Camp D at LSP.

In connection with the foregoing events, the plaintiff filed administrative grievances and disciplinary appeals, complaining of the defendants' alleged wrongful conduct, and he complains that prison officials failed to provide timely responses thereto.  Notwithstanding, he concedes that his disciplinary appeal was thereafter granted in part, and the referenced disciplinary sentence was amended to reflect a charge of Simple Fighting instead of Aggravated Fighting. Apparently as a result of that amendment, the plaintiff was transferred back to dormitory housing at the main prison complex at LSP on September 14, 2012.

The plaintiff also complains of conditions to which he was subjected and of events occurring at Camp D at LSP between May 31 and September 14, 2012.  Specifically, he complains that Assistant Warden Poret took away the plaintiff's walking cane and that, as a result, the plaintiff was required to stand without his cane for approximately 30 minutes every weekday morning when he reported to his work assignment.  In addition, the plaintiff complains that there was inadequate ventilation in the Camp D cellblocks and that there was no fan provided in front of his cell.  As a result, he was subjected to intolerably hot conditions which

were exacerbated by a broken sink in his cell which continuously ran hot water and so added to

the heat in the cell.  Finally, the plaintiff complains of an incident occurring on June 28, 2012,

when he requested medical attention at Camp D and was promised by a medical technician that a

physician would be contacted.  When that had not occurred by July 18, 2012, the plaintiff made a

request to a cellblock security officer, defendant Sgt. Shane Daniel, for emergency medical

intervention, but "no one came."  In addition, the plaintiff asserts that he made a request to

defendant Poret that he be transferred to the main prison cellblocks "where he could be closer by

the treatment center," but defendant Poret repeatedly "turn[ed] his back" on the plaintiff's

request.

Finally, the plaintiff complains that after he was transferred back to the main prison

complex at LSP in September, 2012, he received a telephone call from defendant Troy Poret,

who threatened the plaintiff with a return to the working cellblocks if the plaintiff did not

voluntarily withdraw an administrative grievance which the plaintiff had filed.  According to the

plaintiff, these threats were overheard by numerous inmates.

Upon a review of the plaintiff's pleadings, the Court first notes that whereas the plaintiff

has named the LSP "Investigation Service" as a defendant herein, it does not appear that this

entity is properly before the Court.  Pursuant to Rule 17(b) of the Federal Rules of Civil

Procedure, the capacity of an entity to sue or be sued in federal court is determined by the law of

the state in which the district court sits.  *See Darby v. Pasadena Police Dept.*, 939 F.2d 311, 313

(5th Cir. 1991).  Under Louisiana law, to possess such capacity, an entity must qualify as a

"juridical person," which term is defined by the Louisiana Civil Code as "an entity to which the

law attributes personality, such as a corporation or partnership."  La. Civil Code art. 24.  This

Court has found no Louisiana authority, statutory or otherwise, that defines a unit or department

of a prison to be a juridical entity with the capacity to sue or be sued.  *Cf., Jeffries v. St. Bernard Parish Sheriff's Dept.*, 2013 WL 6044365, *4 (E.D. La. Nov. 13, 2013) (finding that a parish jail "medical department" was not subject to suit in federal court).  Accordingly, it is appropriate that the LSP "Investigation Service" be dismissed from this proceeding.

Turning to a substantive consideration of the plaintiff's claims asserted against the defendants, the Court concludes that the defendants' Motion to Dismiss should be granted, dismissing the plaintiff's claims asserted herein, with prejudice.  Specifically, the Court finds that the plaintiff's factual allegations are not sufficient to "raise [his] right to relief above the speculative level," as is necessary to defeat a Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6).  *See Bell Atlantic Corp. v. Twombly*, *supra*, 550 U.S. at 555.

First, to the extent that the plaintiff's allegations may be interpreted as complaining that the defendants failed to protect him from harm at the hands of a co-inmate, resulting in a fight which occurred on May 11, 2012, the plaintiff's allegations are not sufficient to establish liability in connection with this claim.  Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates.  *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond*, 636 F.2d 1364, 1373 (5th Cir. 1981).  Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Not every prison fight is actionable, however, and in order for there to be liability in connection with this cause of action, there must have existed an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.  *Johnston v. Lucas, supra*, 786 F.2d at 1259.  "Deliberate indifference" is the appropriate standard to be applied in this context, and this

term has been defined as including an element of "subjective recklessness" as used in the criminal law. *Farmer v. Brennan, supra*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). The deliberate indifference standard sets a very high bar, and a claim of mere negligence in failing to protect an inmate from harm is not actionable under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Applying the foregoing standard, the Court fails to discern a plausible basis for a finding of liability on the part of the named defendants. Specifically, the plaintiff makes no allegation that any defendant was personally aware of a serious threat of potential harm to the plaintiff from the offending co-inmate. Nor does the plaintiff allege that he advised any prison employee that he and the offending co-inmate had previously experienced conflict or were currently experiencing conflict. The mere fact that the co-inmate may have bragged of killing a co-inmate at another institution more than twenty (20) years previously does not establish that the co-inmate presented a particular risk of harm to the plaintiff or to any other inmate. Even if the co-inmate had in fact committed the offense of which he boasted, many inmates confined at LSP have histories of violent conduct, and prison officials engage in efforts to classify inmates so as to assign them to housing that takes into account their prior histories, their intervening efforts at rehabilitation and self-control, and their conduct while incarcerated. "Prisons are necessarily-dangerous places," which "house society's most antisocial and violent people in close proximity with one another," thereby making it inevitable that "some level of brutality ... among prisoners" may occur. *Farmer v. Brennan, supra*, 511 U.S. at 858-59 (Thomas, J., concurring). *See also Verrette v. Major*, 2011 WL 3269319, *2 (W.D. La. July 29, 2011) (dismissing an inmate's failure-to-protect claim upon a finding that, even if the defendant was aware of an inmate's

history of violence, "[p]risons are dangerous places housing dangerous people" and "[i]t is unreasonable to believe persons overseeing the classification of inmates for work assignments and housing can prevent all potential prisoner-on-prisoner violence").  Even offenders with violent histories are able to obtain low-risk security classifications by exhibiting good behavior over the course of time, and the plaintiff has failed to allege any facts suggesting that the defendants were deliberately indifferent in their classification of the offending co-inmate.

The plaintiff's conclusory assertions regarding over-crowding and a lack of security at the prison are not sufficient to alter the Court's conclusion in this regard.  Specifically, a claim of mere over-crowding, without more, does not state a violation of an inmate's constitutional rights, *see Thompson v. Stalder*, 2008 WL 874138, *7 (M.D. La. April 1, 2008), and the "[o]ver-crowding of persons in custody is not *per se* unconstitutional."  *Collins v. Ainsworth*, 382 F.3d 529, 540 (5ᵗʰ Cir. 2004), *citing Rhodes v. Chapman*, 452 U.S. 337 (1981).  In the absence of any suggestion that the defendants, by their actions, intended to cause the plaintiff harm or disregarded an obvious threat to the plaintiff's safety of which they were subjectively aware, there is no basis for the imposition of liability against the defendants.

Similarly, the Court rejects the plaintiff's complaint that he was thereafter confined in administrative segregation instead of the prison medical ward between May 11 and May 30, 2012, and that while so confined, he was improperly housed in a cell with another inmate in violation of prison regulations.  Specifically, the plaintiff has failed to allege that he suffered any harm or injury in fact as a result of this brief three-week period of co-habitation.  Moreover, a mere violation of prison rules or regulations by prison officials is not a constitutional violation cognizable in this Court.  *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5ᵗʰ Cir. 1989).  Finally, in *Bell v. Wolfish*, 441 U.S. 520, 542 (1979), the United States Supreme Court indicated that there

is no constitutional principle requiring "one man, one cell," and the "double celling" of inmates is not a *per se* unconstitutional condition. *Rhodes v. Chapman*, *supra,* 452 U.S. at 349; *Duncan v. Puckett*, 91 F.3d 137, 1996 WL 400039 (5th Cir. May 27, 1996) (upholding dismissal, as frivolous, of an inmate's claim of being placed "in a single cell with another inmate"); *Thompson v. Stalder*, *supra* (finding that "the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension"); *Higgins v. Jefferson Parish Prison*, 1988 WL 24137, *3 (E.D. La. March 7, 1988) (claim of being housed in a cell with another inmate dismissed as frivolous).  Accordingly, this claim should be dismissed as being without merit.

The plaintiff also complains that he should not have been charged with Aggravated Fighting in connection with the incident of May 11, 2012, that defendants Voorhies and Jackson failed to adequately investigate the incident, that he was denied due process in connection with subsequent disciplinary board proceedings conducted by defendants Thomas and Augustine (because he was not provided with a copy of his disciplinary report in advance of the hearing), and that his disciplinary appeals and administrative grievances filed relative to these events were not properly or timely handled by defendants Voorhies, Dobbs, Piazza, Roblin, Fontenot and LeBlanc.  These claims likewise fail to amount to constitutional violations.

First, the mere issuance of one or more false disciplinary reports and the imposition of resulting punishment, without more, does not amount to a constitutional violation.  *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984).  Moreover, the United States Supreme Court has held that the procedures attendant to prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment subjects an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State

might conceivably have created a liberty interest for the benefit of the inmate. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Inasmuch as the *Sandin* Court concluded that a disciplinary sentence of placement in segregated confinement was not so atypical as to give rise to a claim of the violation of procedural due process, this Court similarly concludes that the plaintiff's disciplinary punishment, a transfer to segregated confinement at Camp D at LSP, did not result in an atypical and significant deprivation which supports a due process claim. *See Dickerson v. Cain*, 241 Fed. Appx. 193 (5th Cir. 2007) (finding that placement in segregated confinement at LSP does not present "an atypical or significant hardship"). Thus, the plaintiff may not be heard to complain regarding any asserted procedural deficiencies which occurred during his disciplinary proceedings.

Further, any alleged failure by the defendants to investigate or respond timely to the plaintiff's subsequent disciplinary appeal or administrative grievances does not amount to a constitutional violation. Specifically, there is no constitutional violation in an alleged failure by prison officials to investigate and/or respond favorably to an inmate's administrative complaints regarding the actions of security officers. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Accordingly, although the plaintiff complains that prison officials delayed the course of his disciplinary appeal and administrative claims by failing to respond timely thereto, this claim is not one of constitutional dimension and, in any event, as noted above, the plaintiff ultimately obtained partial relief in connection with his disciplinary proceedings, obtaining a reduction in the disciplinary charges against him.

The plaintiff also complains of the denial of appropriate medical care and of the conditions to which he was subjected while confined at Camp D between May 31 and September 10, 2012. Specifically, he complains that an LSP medical officer, Dr. Paul Tree or Dr. Toce (not

named as defendants herein), changed the plaintiff's blood pressure medicine several days prior to the incident of May 11, 2012, that Dr. Tree also "ignored" the plaintiff's medical concerns after the plaintiff was transferred to Camp D, that defendant Poret was abusive to the plaintiff at Camp D, refusing to allow the plaintiff to retain his walking cane and subjecting the plaintiff to excessively hot conditions in an unventilated cell, and that on one occasion the plaintiff was not allowed to obtain emergency medical attention at Camp D.

In order for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation which he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Johnson v. Treen, supra*, 759 F.2d at 1238. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan, supra*, 511 U.S. at 839-30. In addition, the *Farmer* decision makes clear that, in order to be liable on a claim of deliberate indifference, a defendant official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of*

*Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Johnson v. Treen supra*, 759 F.2d at

1238.  Further, a mere delay in treatment does not constitute an Eighth Amendment violation

without both deliberate indifference and a resulting substantial harm.  *Mendoza v. Lynaugh*, 989

F.2d 191, 195 (5th Cir. 1993).

      Applying the foregoing standard, it is clear that the plaintiff has failed to state a claim for

relief relative to his medical care.  Although he alleges that a Dr. Paul Tree or a "Dr. Toce" at

LSP provided inappropriate medical treatment and/or ignored the plaintiff's complaints, and that

an unidentified medical technician refused to provide requested emergency treatment on a single

date in July, 2012, the plaintiff has failed to name these persons as defendants herein, and he has

not identified any other defendant who was allegedly personally responsible for his medical care

or directly involved in same during the relevant time period.  Although the plaintiff named a

Camp D security officer as a defendant herein, Sgt. Shane Daniel, the plaintiff's sole allegation

against this defendant is that, on the referenced date in July, 2012, when the plaintiff made a

request for emergency medical care, defendant Daniel informed the plaintiff that the medical

department had been notified.  This allegation does not implicate any basis for liability relative

to defendant Daniel, and the plaintiff has failed to identify any member of the medical

department who allegedly refused to come to the tier.  And although the plaintiff has named as

defendants the LSP Medical Director, Dr. Jason Collins, and the Ass't Warden who supervises

healthcare at LSP, Kenneth Norris, as defendants in this proceeding, the plaintiff has failed to

assert any personal participation by these defendants in his medical care, alleging only that Dr.

Collins, as the LSP Medical Director, "is legally responsible for the health care of all offenders

... of this institution," and that on one occasion, the plaintiff wrote to defendant Norris about

alleged side-effects of his prescribed medication, and defendant Norris responded by advising

the plaintiff to keep a scheduled appointment.  It is clear that these are assertions of mere

supervisory responsibility on the part of these defendants and, pursuant to *Lozano v. Smith*, 718

F.2d 756, 768 (5th Cir. 1983), in order for a prison official to be found liable under § 1983, the

official must have been personally involved in conduct causing an alleged deprivation of a

constitutional right or there must be a causal connection between the actions of the official and

the constitutional violation sought to be redressed.  *Id.* at 768.  Any allegation that Dr. Collins

and Ass't Warden Norris are responsible for the actions of subordinate officers or co-employees

under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a

claim under § 1983.  *See Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009)

(recognizing that "[a] supervisor may not be held liable for a civil rights violation under any

theory of *respondeat superior* or vicarious liability").  Accordingly, in the absence of any

allegation by the plaintiff that one or more persons who have been named as defendants in this

proceeding have been deliberately indifferent to the plaintiff's medical needs, this claim must be

rejected.

  The plaintiff also complains of the conditions to which he was allegedly subjected during

the relevant time period.  The only factual details he provides relative to these conditions,

however, are a conclusory assertion regarding over-crowding and an alleged lack of security in

his dormitory, an assertion that defendant Poret refused to allow the plaintiff to retain his

walking cane at Camp D, and a claim that the temperatures in his Camp D cell were excessively

high and were exacerbated by the absence of adequate ventilation or fans and by a broken sink in

the plaintiff's cell which continuously ran hot water.  These claims implicate the plaintiff's right,

under the Eighth Amendment, to be free from cruel and unusual punishment in the form of

unconstitutional conditions of confinement.  In this regard, however, it is well-settled that the

United States Constitution imposes upon prison officials only minimal requirements in the treatment and facilities which they provide to prisoners. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). The prohibition against cruel and unusual punishment requires only that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). Thus, a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter*, 501 U.S. 294, 304 (1991). Second, under a subjective standard, the Court must determine that the prison official responsible for the deprivation was "'deliberately indifferent' to inmate health or safety". *Id.; Farmer v. Brennan, supra*, 511 U.S. at 834. Mere negligence is not a basis for liability under § 1983. *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). Accordingly, in order to find liability on the part of a prison official, the fact-finder must determine both (1) that the prison official was personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) that the official in fact drew the inference. *Farmer v. Brennan, supra,* 511 U.S. at 837. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. *Woods v. Edwards*, *supra,* 51 F.3d at 581; *Wilson v. Seiter, supra*, 501 U.S. at 303.

First, with regard to the alleged over-crowding and a purported lack of security at LSP, this claim is appropriately analyzed in the context of the plaintiff's failure-to-protect claim,

which claim the Court has addressed above, concluding that the plaintiff has failed to sufficiently allege that prison officials were subjectively deliberately indifferent to his safety.  *See Clark v. Gusman*, 2012 WL 1825306, *2 (E.D. La. March 29, 2012), and cases cited therein (recognizing that claims relative to inadequate security are analyzed as failure-to-protect claims). Accordingly, this claim is subject to dismissal as being without merit.

The plaintiff also complains that defendant Poret refused to allow him to retain his walking cane while confined at Camp D.  Notwithstanding, the plaintiff does not allege that the walking cane was medically necessary, that it had been prescribed by a physician or other medical officer at the prison, that he was required to walk unreasonable distances without it, or that he specifically complained to any prison official that he needed the cane.  Nor does he allege that his medical condition was worsened or aggravated as a result of the defendant's action in refusing possession of the referenced cane.  The most that the plaintiff has alleged regarding the referenced cane is that for brief 30-35 minute periods every weekday, he was required to stand in discomfort without the benefit of the cane.  In the Court's view, this assertion does not establish a reasonable likelihood that prison officials were deliberately indifferent to his serious medical needs in refusing him possession of the referenced cane.

Finally, although the issue is a closer one, the Court finds that the plaintiff's allegations regarding exposure to excessive heat and inadequate ventilation at Camp D between May 31 and September 14, 2012, are not sufficient to state a claim of constitutional dimension.  Although exposure to extreme heat is actionable under some circumstances, the plaintiff's allegations fall short of what is required to establish a constitutional violation.  For example, in *Johnson v. Texas Board of Criminal Justice*, 281 Fed. Appx. 319 (5th Cir. 2008), the United States Court of Appeal for the Fifth Circuit concluded that the plaintiff's allegations regarding extreme heat were "not

sufficient to state a constitutional claim" because, although the plaintiff alleged that the temperatures were "sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions numerous times."  *Id.* at 321. *See also Ventry v. Gusman*, 2012 WL 1405862, *4, *7 (E.D. La. March 29, 2012).  Similarly, it has been held that conclusory claims of inadequate heat and ventilation, without more, fail to implicate a federal constitutional right.  *See Clark v. Gusman*, 2012 WL 1825306, *6 (E.D. La. March 29, 2012), *citing Johnson v. Thaler*, 1999 WL 1131941, *1 (5th Cir., Nov. 12, 1999) (noting that the inmate plaintiffs' "allegations of inadequate ventilation and excessive heat do not entitle them to relief under 42 U.S.C. § 1983"); *Parker v. Smith*, 1994 WL 198944, *2 (5th Cir. May 6, 1994) (dismissing as frivolous the plaintiff's claim that "the ventilation system in the Smith County jail [was] inadequate").  In the instant case, the plaintiff was confined at Camp D for a period of four (4) months, and his allegations make clear that he had a daily work assignment and so was not subjected to the alleged conditions without periodic intervals out of his cell.  Further, although the plaintiff alleges that he complained to defendant Poret about an alleged need to be transferred out of Camp D, the plaintiff does not allege that he specifically complained to defendant Poret about the excessive heat and lack of ventilation.  To the contrary, the plaintiff asserts that he requested a transfer back to the main prison so as to be "closer by the treatment center for medical observation, etc."  Accordingly, the plaintiff has failed to sufficiently allege that defendant Poret was himself subjectively aware of the plaintiff's specific complaints so as to support a conclusion that the defendant was deliberately indifferent to same.[4] In short, whereas the plaintiff's allegations might support a claim for injunctive relief were he

_____

4.  Although the plaintiff alleges that defendant Poret "had his officers break the stainless steel sink" in the plaintiff's cell, this assertion is conclusory and is not corroborated by any factual details whatever.

still exposed to the alleged intolerable conditions, *see Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) (upholding a grant of injunctive relief to death row inmates who were subjected to continuing excessive heat which created significant health risks); *Ball v. LeBlanc*, 2013 WL 6705141 (M.D. La. Dec. 19, 2013) (same), the plaintiff in the instant case has not requested injunctive relief in this proceeding and, in any event, he has admittedly been transferred from Camp D and so is no longer exposed to the alleged deleterious conditions.  *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (recognizing that an inmate's transfer from an offending institution normally "render[s] ... claims for declaratory and injunctive relief moot"). Accordingly, this claim is subject to dismissal as well.

Finally, the plaintiff complains that upon return to dormitory housing at the LSP main prison in September, 2012, he was contacted by defendant Poret and was threatened with retaliatory action if he did not agree to voluntarily withdraw administrative claims which he had filed against prison officials.  Whether or not the plaintiff acceded to these threats and agreed to drop the administrative claims, the Court finds that the plaintiff has failed to state a claim of constitutional dimension in this regard.  In the first place, mere verbal threats, no matter how offensive and even if true, are not sufficient to amount to a constitutional violation.  *Orange v. Ellis*, 348 Fed. Appx. 69, 72 (5th Cir. 2009); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.). Further, even if the referenced threats were sufficient to induce the plaintiff to withdraw the referenced administrative grievances, he suffered no apparent prejudice as a result thereof because the defendants have not asserted, as a defense to the plaintiff's claims, that he has failed to exhaust administrative remedies relative thereto as mandated by 42 U.S.C. § 1997e. Accordingly, inasmuch as a showing of cognizable legal detriment or prejudice, greater than *de minimis*, is a prerequisite for a claim of retaliatory interference with access to the courts, *Lewis v.*

*Casey*, 518 U.S. 343, 351 (1996) (holding that an access-to-courts claim requires a showing that an inmate has been "hindered [in] his efforts to pursue a legal claim"), the plaintiff's claim in this regard must likewise be rejected.[5]

To the extent that the plaintiff seeks to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if the state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, considering the allegations of the plaintiff's Complaint and the recommendation of the Court that all of the plaintiff's federal claims be dismissed, the Court recommends that the exercise of supplemental jurisdiction be declined.

<u>RECOMMENDATION</u>

It is recommended that the plaintiff's claims asserted against defendant B. Dobbs be dismissed for failure of the plaintiff to serve this defendant within 120 days as mandated by Fed. R. Civ. P. 4(m).  It is further recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the defendants' Motion to Dismiss (Rec.

-------------------

5.  The plaintiff makes other conclusory assertions in his Complaint relative to alleged retaliatory conduct on the part of the defendants, but he fails to allege in what way he was allegedly retaliated against or by whom.  Accordingly, inasmuch as claims of retaliation are regarded with great skepticism, lest the federal courts potentially embroil themselves in every adverse act that occurs within a penal institution, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and inasmuch as inmates are required to provide more than mere conclusory allegations that they believe themselves to be the targets of retaliation, *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), the Court finds the plaintiff's allegations to be notably deficient in this regard.

Doc. 13) be granted, dismissing the plaintiff's claims asserted against the remaining defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on January 31, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**